1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3                                No. 1:11-cr-10157-MLW-ALL

4

5     UNITED STATES OF AMERICA

6

7     vs.

8

9     ADAM HART, TIMOTHY REARDON, and WILLIAM NEOFOTISTOS

10

11                          * * * * * * * * *

12

13                        For Hearing Before:
                         Chief Judge Mark L. Wolf
14

15                        Plea Change Hearing

16

                         United States District Court
17                       District of Massachusetts (Boston.)
                         One Courthouse Way
18                       Boston, Massachusetts 02210
                         Wednesday, June 1, 2011
19

20                          * * * * * * * *

21

22              REPORTER: RICHARD H. ROMANOW, RPR
                         Official Court Reporter
23                   United States District Court
          One Courthouse Way, Room 5200, Boston, MA 02210
24                    bulldog@richromanow.com

25

```
 1                    A P P E A R A N C E S

 2

 3    FRED M. WYSHAK, JR., ESQ.
         United States Attorney's Office
 4       United States Courthouse
         One Courthouse Way, Suite 9200
 5       Boston, Massachusetts 02210
         (617) 748-3201
 6       E-mail: Fred.wyshak@usdoj.gov
         For the United States of America
 7

 8    ROBERT A. GEORGE, ESQ.
         Robert A. George & Associates, P.C.
 9       111 Huntington Avenue
         Boston, Massachusetts 02199
10       (617) 262-6900
         E-mail: Rgeorgelaw@gmail.com
11       For Adam Hart and Timothy Reardon

12
      ANDREW D. BERMAN, ESQ.
13       Simonds, Winslow, Willis & Abbott
         50 Congress Street, Suite 925
14       Boston, Massachusetts 02109
         (617) 723-4163
15       E-mail: Andrewdicarloberman@gmail.com
         For William Neofotistos
16

17

18

19

20

21

22

23

24

25
```

1        P R O C E E D I N G S

2        (Begins, 3:00 p.m.)

3        THE CLERK:  Criminal Matter 11-10157, United

4   States versus Adam Hart, Timothy Reardon and William

5   Neofotistos.  The Court is in session.  You may be

6   seated.

7        THE COURT:  Good afternoon.  Would counsel

8   please identify themselves for the Court and for the

9   record.

10       MR. WYSHAK:  Good afternoon, your Honor.  Fred

11  Wyshak for the United States.

12       MR. BERMAN:  Good afternoon, your Honor.

13  Andrew Berman for Mr. Neofotistos.

14       MR. GEORGE:  Robert George for Mr. Reardon and

15  Mr. Hart.

16       THE COURT:  All right.

17       MR. WYSHAK:  Your Honor, before we begin, um,

18  I have the indictment waivers and I've had each of the

19  defendants execute them.

20       THE COURT:  Well, I'm going to ask them some

21  questions, but we're not quite there yet.

22       I understand that the defendants yesterday

23  appeared before Magistrate Judge Dein and she conducted

24  a colloquy that addressed both the conventional dual

25  representation issues pursuant to *Foster* and also made

1   inquiry concerning the unique questions resulting from

2   Mr. George's status as a defendant as well as counsel

3   for two of the -- well, a defendant in another case in

4   this courtroom as well as counsel for two of the

5   defendants in this case.

6        Is that correct?

7           MR. GEORGE:  That is true, your Honor.

8           THE COURT:  And I know she accepted -- I've

9   spoken to her.  She accepted the waivers as being

10  knowingly and voluntarily given by defendants who are

11  competent and they each consulted independent counsel,

12  one Ms. Conrad, one Mr. Perlstein, is that right?

13          MR. GEORGE:  Yes, your Honor.

14          THE COURT:  And, Mr. Wyshak, is the government

15  satisfied with the colloquy and the waivers?

16          MR. WYSHAK:  Yes, your Honor.

17          THE COURT:  All right.  And let me see.  You

18  can be seated.

19       Mr. Reardon?

20          MR. REARDON:  yes, your Honor.

21          THE COURT:  And you've now had another day to

22  think about this.

23       Have you thought about all the questions that

24  Magistrate Dein asked you yesterday about the issues and

25  problems that could arise if you and Mr. Hart had the

1  same lawyer even if that lawyer wasn't Mr. George?

2          MR. REARDON:  Yeah, but I'm 100 percent

3  comfortable with Mr. George as my attorney even in this

4  situation.

5          THE COURT:  You're still comfortable with him

6  as your attorney?

7          MR. REARDON:  I am.

8          THE COURT:  And you understand the particular

9  risks that are associated with that?

10          MR. REARDON:  I do.

11          THE COURT:  And, Mr. Hart, the same questions

12  for you.

13      Mr. Hart, have you thought about this since

14  yesterday?

15          MR. GEORGE:  Your Honor, Mr. Hart's hard of

16  hearing.  I'm sorry.

17          THE COURT:  Well, I don't know how he's going

18  to answer the rest of my questions.

19      Mr. Hart, are you able to hear me?

20          (Pause.)

21          THE COURT:  Come up right here.

22          MR. GEORGE:  Do you need me up there with you,

23  your Honor?

24          THE COURT:  Yes, you might as well come with

25  both of them.  Right over there.

1                  (Moves close to judge.)

2                  THE COURT:  All right.  Mr. Hart, can you hear

3      me?

4                  MR. HART:  Now, yes.

5                  THE COURT:  Okay.  And were you able to hear

6      the Magistrate Judge yesterday when she questioned you?

7                  (Silence.)

8                  THE COURT:  Do you remember being in the

9      courthouse yesterday?

10                 MR. HART:  Yes.

11                 THE COURT:  What happened when you were here

12     yesterday?  What's that?

13                 MR. HART:  We farmed out everything.  We went

14     down to see the pretrial girls.

15                 THE COURT:  All right.  And what happened when

16     you were before the Magistrate?

17                 MR. HART:  We just testified to the fact that

18     we wanted to obtain Mr. George as our attorney.

19                 THE COURT:  All right.  And did you consult

20     another attorney before -- or in connection with that?

21                 MR. HART:  What?

22                 THE COURT:  Did you speak to another attorney

23     about that yesterday, too?

24                 MR. HART:  Yes, your Honor.

25                 THE COURT:  Did you speak to Ms. Conrad or

```
 1    Mr. Perlstein?
 2              MR. REARDON:  Ms. Conrad.
 3              THE COURT:  All right.  And do you feel you
 4    understood what was going on yesterday?
 5              MR. HART:  Yes, your Honor.
 6              THE COURT:  And have you thought about this
 7    since yesterday, that is, whether you want Mr. George to
 8    continue to represent you and represent Mr. Reardon as
 9    well?
10              MR. HART:  Yes, your Honor.
11              THE COURT:  And do you still want Mr. George
12    to represent you as well as Mr. Reardon?
13              MR. HART:  Yes, positively.
14              THE COURT:  What's that?
15              MR. HART:  Yes, your Honor.
16              THE COURT:  Okay.  Sit down at that front
17    table and I'll see if you can hear me.  You, too.
18              (Everyone seated at front table.)
19              (Pause.)
20              THE COURT:  We have something that should
21    enhance Mr. Hart's ability to hear and we'll see if we
22    can get it working for you.
23              MR. BERMAN:  Your Honor, if I may?
24    Mr. Neofotistos is also having difficulty hearing.  So I
25    just wanted to raise it with the Court before we get too
```

```
 1   far into the proceedings.
 2             THE CLERK:  Judge, we could use the
 3   headphones.
 4             THE COURT:  Do you have two sets?
 5             THE CLERK:  We have three sets.
 6             THE COURT:  We'll give him headphones, too.
 7             MR. BERMAN:  Thank you, your Honor.
 8             (Hands out headsets.)
 9             THE CLERK:  Judge, would you say something to
10   test it?
11             THE COURT:  Why don't you give it to both of
12   them first.
13             THE CLERK:  All right.
14             (Gives to Mr. Hart and Mr. Neofotistos.)
15             MR. HART:  Should I take the hearing aid out?
16   I'm better off.
17             THE COURT:  Okay.
18        Mr. Hart, are you able to hear me now?  Mr. Hart,
19   are you able to hear me?
20             MR. HART:  Ain't nothing now.
21             (Adjusts.)
22             MR. HART:  It's static.
23             THE COURT:  Mr. Neofotistos, are you able to
24   hear me?
25             MR. HART:  Oh, yes, your Honor.
```

1          MR. NEOFOTISTOS:  Yes, your Honor.

2          THE COURT:  Are you able to hear me?

3          MR. HART:  Yes, your Honor.

4          MR. NEOFOTISTOS:  Yes, your Honor.

5          THE COURT:  All right.

6      Mr. Wyshak, just give me a brief overview of this

7  case.

8          MR. WYSHAK:  Your Honor, essentially Mr. Hart,

9  Mr. Neofotistos, Mr. Reardon ran an illegal gambling

10  business down in Cape Cod.  It fits the criteria for the

11  violation of 18 U.S.C. 1955 and that is it employed more

12  than five people, was a continuous operation for more

13  than 30 days, in fact, it's been in operation for over a

14  decade, and had gross revenues in excess of $2,000.

15          THE COURT:  You want to keep your voice up so

16  they can hear this.

17          MR. WYSHAK:  Okay.  So they operated this

18  illegal gambling business for years.  One of their

19  customers was associated, close friends with a law

20  enforcement official in the DEA'S office in Cape Cod.

21      There came a time when the Massachusetts State

22  Police sought to initiate a wiretap investigation of

23  Mr. Hart's gambling business.  The elected law

24  enforcement official tipped off his friend to the fact

25  that Mr. Hart's gambling business was going to be the

1    target of a law enforcement investigation and instructed

2    that individual to pass that information along to

3    Mr. Hart, which he did, and Mr. Hart, and

4    Mr. Neofotistos, essentially closed down their business

5    for a period of approximately six months.

6               THE COURT:  Okay.  All right.  Each of the

7    three defendants should stand and raise his right hand.

8               (DEFENDANTS, sworn.)

9               THE COURT:  Now, I'm going to ask these

10   questions one time.  I want Mr. Hart to answer first,

11   Mr. Reardon second, and somebody should pronounce --

12               MR. BERMAN:  Neofotistos.

13               THE COURT:  Mr. Neofotistos third.  Okay?  If

14   you have any trouble understanding my questions, just

15   tell me.  All right?

16        Please state your true full name?

17               MR. HART:  Adam Hart.

18               MR. REARDON:  Timothy Reardon.

19               MR. NEOFOTISTOS:  William Neofotistos.

20               THE COURT:  All right.  Do you understand that

21   you just took an oath to answer the questions I'm going

22   to ask you truthfully and the failure to do that could

23   be a separate prosecutable criminal offense?

24               MR. HART:  Yes, your Honor.

25               MR. REARDON:  Yes, your Honor.

1          MR. NEOFOTISTOS:  Yes, your Honor.

2          THE COURT:  Do you also understand that if

3    you're confused by any of my questions or unsure about

4    what an honest and accurate answer would be, I'll give

5    you a chance to talk to your lawyer so we can clear up

6    any confusion and you can give me a reliable response.

7    Do you understand that?

8          MR. HART:  Yes, your Honor.

9          MR. REARDON:  Yes, your Honor.

10          MR. NEOFOTISTOS:  Yes.

11          THE COURT:  Have you ever been arrested or

12    convicted under any name other than the name you just

13    gave me?

14          MR. HART:  Yes.

15          THE COURT:  Okay.  What name or names have you

16    been arrested or convicted under?

17          MR. HART:  Adam Hart.  Just my own name.

18          THE COURT:  Your own name.  All right.

19          MR. REARDON:  No, your Honor.

20          (Pause.)

21          THE COURT:  Have you ever been arrested or

22    convicted under any other name, Mr. Neofotistos?

23          MR. NEOFOTISTOS:  No, your Honor.

24          THE COURT:  How old are you?

25          MR. NEOFOTISTOS:  60.

```
 1              THE COURT:  I'm going to start with Mr. Hart.
 2    Okay?
 3         Mr. Hart, how old are you?
 4              MR. HART:  85.
 5              MR. REARDON:  33.
 6              MR. NEOFOTISTOS:  60.
 7              THE COURT:  And how far did you go in school?
 8              MR. HART:  A Boston University graduate in
 9    '51.
10              MR. REARDON:  An associate's degree in
11    criminal justice.
12              MR. NEOFOTISTOS:  Um, I graduated junior
13    college.
14              THE COURT:  And do you have any difficulty
15    understanding English?
16              MR. HART:  No, sir.
17              MR. REARDON:  No, sir.
18              MR. NEOFOTISTOS:  No.
19              THE COURT:  Have you ever been treated for
20    mental illness or drug addiction?
21              MR. HART:  No, your Honor.
22              MR. REARDON:  No, your Honor.
23              (Pause.)
24              THE COURT:  Have you ever been treated for
25    mental illness or drug addiction?
```

```
1              MR. NEOFOTISTOS:  No, your Honor.

2              THE COURT:  Are you today under the influence

3    of any drug, medication or alcohol?

4              MR. HART:  No, your Honor.

5              MR. REARDON:  No, your Honor.

6              MR. NEOFOTISTOS:  No, your Honor.

7              THE COURT:  Have you received an information

8    or the information with the charge or charges against

9    you?

10             MR. HART:  No, your Honor.

11             THE COURT:  Well, that's a problem.

12        Have you received the document with charges

13   against you which is called an "information"?

14             MR. HART:  Yes, your Honor.

15             MR. REARDON:  Yes, your Honor.

16             MR. NEOFOTISTOS:  Yes, your Honor.

17             THE COURT:  Did you read it?

18             MR. HART:  Yes.

19             MR. REARDON:  Yes, your Honor.

20             MR. NEOFOTISTOS:  Yes, your Honor.

21             THE COURT:  And did you discuss those charges

22   with your attorney including what the government would

23   have to prove beyond a reasonable doubt to convict you

24   of those charges?

25             MR. HART:  Yes, your Honor.
```

1             MR. REARDON:  Yes, sir.

2             MR. NEOFOTISTOS:  Yes.

3             THE COURT:  Are you fully satisfied with your

4     lawyer's work for you in this case?

5             MR. HART:  Yes, your Honor.

6             MR. REARDON:  Yes, your Honor.

7             MR. NEOFOTISTOS:  Yes.

8             THE COURT:  Do you understand that these

9     charges are in what is called an information issued by

10    the United States Attorney's Office rather than in an

11    indictment returned by a grand jury?

12            MR. HART:  Yes, your Honor.

13            MR. REARDON:  Yes, your Honor.

14            MR. NEOFOTISTOS:  Yes, your Honor.

15            THE COURT:  Do you understand that under the

16    Constitution of the United States you have a right,

17    unless you give it up, to be charged in a criminal case

18    like this one in an indictment issued by a grand jury

19    rather than in an information issued by the United

20    States Attorney?

21            MR. HART:  Yes, your Honor.

22            MR. REARDON:  Yes, your Honor.

23            MR. NEOFOTISTOS:  Yes, your Honor.

24            THE COURT:  And do you understand that in

25    order to return an indictment -- well, do you understand

1   that a grand jury is composed of 16 to 23 people?

2           MR. HART:  Yes, your Honor.

3           MR. REARDON:  Yes, your Honor.

4           MR. NEOFOTISTOS:  Yes, your Honor.

5           THE COURT:  Do you under that in order to

6   return an indictment with a criminal charge at least 12

7   of the grand jurors would have to find there's probable

8   cause to believe that you committed the crime charged?

9           MR. HART:  Yes, sir.

10          MR. REARDON:  Yes, your Honor.

11          MR. NEOFOTISTOS:  Yes, your Honor.

12          THE COURT:  And do you understand that if this

13  matter were presented to a grand jury, um, it might or

14  might not bring these charges against you?

15          MR. HART:  Yes, I understand.  Yes, your

16  Honor.

17          MR. REARDON:  Yes, your Honor.

18          MR. NEOFOTISTOS:  Yes.

19          THE COURT:  All right.  I'm going to --

20      Mr. Hart, do you have there a copy of the July

21  15th, 2010 letter to Robert George, your attorney, from

22  the U.S. Attorney?

23          MR. HART:  Yes, your Honor.

24          THE COURT:  Okay.  And I'll make that Exhibit

25  1.

1          And, Mr. Reardon, do you have a copy of the July

2     15th, 2010 letter from the U.S. Attorney to Mr. George

3     concerning you?

4               MR. REARDON:  I do, your Honor.

5               THE COURT:  And, Mr. Neofotistos, do you have

6     a copy of the August 11th, 2010 letter to Mr. Berman?

7               MR. NEOFOTISTOS:  Yes, your Honor.

8               THE COURT:  I'll make that Exhibit 3.

9          Okay.  Is that letter your plea agreement with the

10    government?

11              MR. HART:  Yes, your Honor.

12              MR. REARDON:  Yes, your Honor.

13              MR. NEOFOTISTOS:  Yes, your Honor.

14              THE COURT:  And did you sign it on the last

15    page?

16              MR. HART:  Yes, your Honor.

17              MR. REARDON:  Yes, your Honor.

18              MR. NEOFOTISTOS:  Yes, your Honor.

19              THE COURT:  Did you read it before you signed

20    it?

21              MR. HART:  Yes, your Honor.

22              THE COURT:  One at a time.  Mr. Hart,

23    Mr. Reardon, and then to the back.

24         Did you read it before you signed it?

25              MR. HART:  Yes, your Honor.

1          MR. REARDON:  Yes, your Honor.

2          MR. NEOFOTISTOS:  Yes, your Honor.

3          THE COURT:  Did you discuss the terms of the

4    letter with your attorney before you signed it?

5          MR. HART:  Yes, your Honor.

6          MR. REARDON:  Yes, your Honor.

7          MR. NEOFOTISTOS:  Yes, your Honor.

8          THE COURT:  Did you feel you understood the

9    letter before you signed it?

10          MR. HART:  Yes, your Honor.

11          MR. REARDON:  Yes, sir.

12          MR. NEOFOTISTOS:  Yes, your Honor.

13          THE COURT:  Does that letter both accurately

14   and completely describe your agreement with the

15   government?

16          MR. HART:  Yes, your Honor.

17          MR. REARDON:  Yes, your Honor.

18          MR. NEOFOTISTOS:  Yes, your Honor.

19          THE COURT:  Has anybody given you any

20   assurances or made any promises to you that are not in

21   your plea agreement letter?

22          MR. HART:  No, your Honor.

23          MR. REARDON:  No, your Honor.

24          MR. NEOFOTISTOS:  No, your Honor.

25          THE COURT:  Has anybody threatened you or

1    tried to force you to plead guilty or give up your right

2    to be indicted by a grand jury?

3                    MR. HART:  No, your Honor.

4                    MR. REARDON:  No, your Honor.

5                    MR. NEOFOTISTOS:  No, your Honor.

6                    THE COURT:  And have you discussed with your

7    attorney the Paragraph 6 in your plea agreement in which

8    you give up certain rights you would otherwise have to

9    appeal or bring other challenges to matters in this

10   case?

11                   MR. HART:  Where's that?

12                   THE COURT:  Do you see that one?

13                   MR. HART:  (Reads.)

14                   THE COURT:  Did you discuss that particular

15   provision with your attorney?

16                   MR. HART:  Yes, your Honor.

17                   MR. REARDON:  Yes, your Honor.

18                   MR. NEOFOTISTOS:  Yes, your Honor.

19                   MR. HART:  All of it.

20                   THE COURT:  All right.  And do you understand

21   that you're each, in this agreement, giving up your

22   right to challenge your conviction in any way once you

23   plead guilty?

24                   MR. HART:  Yes, your Honor.

25                   MR. REARDON:  Yes, your Honor.

1          MR. NEOFOTISTOS:  Yes.

2          THE COURT:  And do you understand that if the

3     government files a substantial assistance motion, um,

4     and I grant it, you're giving up your right to appeal

5     your sentence as well?

6          MR. HART:  Yes, your Honor.

7          MR. REARDON:  Yes, your Honor.

8          MR. NEOFOTISTOS:  Yes.

9          THE COURT:  And do you understand that by

10    agreeing to have this case go ahead on the information

11    you're giving up your right to be indicted by a grand

12    jury?

13         MR. HART:  Yes, your Honor.

14         MR. REARDON:  Yes, your Honor.

15         MR. NEOFOTISTOS:  Yes, your Honor.

16         THE COURT:  And have you discussed with your

17    lawyer whether you want to give up that right to be

18    indicted by a grand jury?

19         MR. HART:  Yes, we did, your Honor.

20         MR. REARDON:  Yes, your Honor.

21         MR. NEOFOTISTOS:  Yes, your Honor.

22         THE COURT:  And do you, in fact, want to give

23    up your right to be indicted or have this dealt with by

24    an indictment and have the case go ahead based on the

25    information?

1              MR. HART:  Yes, your Honor.

2              MR. REARDON:  Yes, your Honor.

3              MR. NEOFOTISTOS:  Yes, your Honor.

4              THE COURT:  All right.  Well, I find that

5      you're each competent, you're acting knowingly and

6      voluntarily, you're effectively represented, so I'll

7      accept your waivers of indictment and we will proceed.

8              (Pause.)

9              THE COURT:  Now we'll move to the arraignment

10     phase.

11         Do you want the information read to you or do you

12     waive, give up the reading of the information?

13             MR. HART:  Give it up?  Yes, your Honor, give

14     up the waiver.

15             MR. REARDON:  We'll waive the right.

16             MR. NEOFOTISTOS:  Yes, your Honor.

17             THE COURT:  I'm sorry.  Do you want the

18     information read or do you want it waived?

19             MR. NEOFOTISTOS:  Waived.

20             THE COURT:  All right.  Then I'll ask you some

21     questions as to whether -- so I can determine whether to

22     accept your offered pleas of guilty.

23         Do you understand that if I accept your guilty

24     pleas you will become federal felons and you may lose

25     certain rights, if you have them, including the rights

1   to vote, to hold public office, to serve on a jury, and

2   to possess a firearm?

3              MR. HART:  Yes, your Honor.

4              MR. REARDON:  Yes, your Honor.

5              MR. NEOFOTISTOS:  Yes, your Honor.

6              THE COURT:  Are you a United States citizen?

7              MR. HART:  Yes, your Honor.

8              MR. REARDON:  Yes, your Honor.

9              MR. NEOFOTISTOS:  Yes, your Honor.

10             THE COURT:  Do you understand that the maximum

11  possible penalties for each of the charges against you

12  are as stated in your plea agreement, particularly 5

13  years in prison, a fine of up to $250,000, 3 years of

14  supervised release, a $100 mandatory special assessment

15  on each count against you, and forfeiture as requested

16  in the information?

17             MR. HART:  Yes, your Honor.

18             MR. REARDON:  Yes, your Honor.

19             MR. NEOFOTISTOS:  Yes, your Honor.

20             THE COURT:  Is there any issue of restitution,

21  Mr. Wyshak?

22             MR. WYSHAK:  No, your Honor.

23             THE COURT:  Do you understand that the

24  sentencing in this case will be governed by the Advisory

25  Guideline System that's now in effect in federal court?

```
 1                    MR. HART:  Yes, your Honor.

 2                    MR. REARDON:  Yes, your Honor.

 3                    MR. NEOFOTISTOS:  Yes, your Honor.

 4                    THE COURT:  Have you talked to your attorney

 5           about how that guideline system might operate in your

 6           case?

 7                    MR. HART:  Yes, your Honor.

 8                    MR. REARDON:  Yes.

 9                    MR. NEOFOTISTOS:  Yes, your Honor.

10                    THE COURT:  And do you understand that as we

11           sit here today neither your attorney nor anybody else

12           can tell you with certainty what the guideline range is

13           for your sentence or what sentence I will impose because

14           until I conduct the sentencing hearing I cannot make

15           those decisions myself.  Do you understand?

16                    MR. HART:  Yes, your Honor.

17                    MR. REARDON:  Yes, your Honor.

18                    MR. NEOFOTISTOS:  Yes, your Honor.

19                    THE COURT:  And do you understand that, um,

20           depending on the facts, I have the authority to give a

21           sentence that's higher or lower than the guideline

22           range, but in most cases I find that it's most

23           appropriate to give a sentence that's within the

24           guideline range?

25                    MR. HART:  Yes, your Honor.
```

1          MR. REARDON:  Yes, your Honor.

2          MR. NEOFOTISTOS:  Yes.

3          THE COURT:  Do you understand that while

4    you've given up certain rights to appeal, as we've

5    discussed a short time ago, the government has retained

6    its rights to appeal including your sentence?

7          MR. HART:  Yes, your Honor.

8          MR. REARDON:  Yes, your Honor.

9          MR. NEOFOTISTOS:  Yes.

10          THE COURT:  Do you understand there's no

11    parole in the federal system so if I sentence you to

12    prison you'll have to serve substantially all of that

13    time in prison?

14          MR. HART:  Yes, your Honor.

15          MR. REARDON:  Yes, your Honor.

16          MR. NEOFOTISTOS:  Yes, your Honor.

17          THE COURT:  And do you understand that if I

18    give you a sentence that's higher than you hoped for or

19    even higher than the government recommends, that will

20    not be a reason permitting you to withdraw your guilty

21    plea?

22          MR. HART:  Yes, your Honor.

23          MR. REARDON:  Yes, your Honor.

24          MR. NEOFOTISTOS:  Yes, your Honor.

25          THE COURT:  And do you understand that

1   essentially it's up to the government to decide whether

2   you have rendered substantial assistance and whether it

3   should file a motion asking that I depart downward and

4   give you a sentence that's lower than the guideline

5   range?

6           MR. HART:  I understand, yes, your Honor.

7           MR. REARDON:  Yes, your Honor.

8           MR. NEOFOTISTOS:  Yes, your Honor.

9           THE COURT:  All right.

10       Do you understand that you have a right, if you

11  want to use it, to have the charges against you decided

12  at a trial by a jury?

13          MR. HART:  Yes, your Honor.

14          MR. REARDON:  Yes, your Honor.

15          MR. NEOFOTISTOS:  Yes, your Honor.

16          THE COURT:  Do you understand that if we had a

17  trial you would have a right to a lawyer and if you

18  couldn't afford a lawyer one would be appointed to

19  represent you at public expense?

20          MR. HART:  Yes, your Honor.

21          MR. REARDON:  Yes, your Honor.

22          MR. NEOFOTISTOS:  Yes, your Honor.

23          THE COURT:  Do you understand that if we had a

24  trial you would be presumed innocent, you would not have

25  to prove you were innocent, rather the government would

```
 1   have to prove you were guilty beyond a reasonable doubt
 2   to achieve your conviction?
 3              MR. HART:  Yes, your Honor.
 4              MR. REARDON:  Yes, your Honor.
 5              MR. NEOFOTISTOS:  Yes, your Honor.
 6              THE COURT:  And do you understand that if we
 7   had a trial you would have a right through your lawyer
 8   to object to the government's evidence and challenge its
 9   witnesses?
10              MR. HART:  Yes, your Honor.
11              MR. REARDON:  Yes, your Honor.
12              MR. NEOFOTISTOS:  Yes, your Honor.
13              THE COURT:  Do you understand that if we had a
14   trial you would have an opportunity but not an
15   obligation to present a defense?
16              MR. HART:  Yes, your Honor.
17              MR. REARDON:  Yes, your Honor.
18              MR. NEOFOTISTOS:  Yes, your Honor.
19              THE COURT:  And do you understand that as part
20   of that you would have an opportunity but not an
21   obligation to testify yourself and if you decided not to
22   testify I would instruct a jury that it could draw no
23   suggestion that you were guilty from your decision not
24   to testify?
25              MR. HART:  I understand, yes, your Honor.
```

1          MR. REARDON:  Yes, your Honor.

2          MR. NEOFOTISTOS:  Yes, your Honor.

3          THE COURT:  All right.

4     And you understand that if I accept your plea of

5     guilty you'll be giving up your right to a trial and

6     there would be no trial?

7          MR. HART:  Yes, your Honor.

8          MR. REARDON:  Yes, your Honor.

9          MR. NEOFOTISTOS:  Yes, your Honor.

10          THE COURT:  Do you understand that Count 1

11    charges all three of you with engaging in an illegal

12    gambling business, sports betting, or aiding and

13    abetting that crime?

14          MR. HART:  Yes, your Honor.

15          MR. REARDON:  Yes, your Honor.

16          MR. NEOFOTISTOS:  Yes, your Honor.

17          THE COURT:  And do you understand that to

18    prove a violation of Count 1 the government would have

19    to prove beyond a reasonable doubt either -- well, it

20    would have to prove beyond a reasonable doubt -- well,

21    let me take a step back.

22     I'm going to explain to you that there are two

23    ways the government could convict you on Count 1.  Do

24    you understand that the first way is if the government

25    proved beyond a reasonable doubt first that you

1  conducted, financed, managed supervised, directed or

2  owned a business consisting of sports betting, second,

3  that sports betting is illegal gambling in

4  Massachusetts, and third, that the business involved

5  five or more people who conducted finance, managed,

6  supervised, directed or owned all of them or part of the

7  business, and fourth, that the business had been in

8  substantially continuous operation for five or more --

9  by five or more persons for more than 30 days or had a

10  gross revenue of $2,000 in a single day?

11          MR. HART:  Yes, your Honor.

12          MR. REARDON:  Yes, your Honor.

13          MR. NEOFOTISTOS:  Yes, your Honor.

14          THE COURT:  All right.

15      Do you understand that the government could get

16  your conviction on Count 1 if it proved that one of your

17  co-defendants committed this crime and that you knew

18  that he was committing the crime and intentionally did

19  something to help the crime succeed?

20          MR. HART:  Yes, your Honor.

21          MR. REARDON:  Yes, your Honor.

22          MR. NEOFOTISTOS:  Yes, your Honor.

23          THE COURT:  Okay.

24      Now, the specific charge here is that from in or

25  before 2000 and continuing until about February of 2009

1    in the District of Massachusetts and elsewhere each of

2    you, and others known and unknown to the grand jury,

3    conducted, financed, managed, supervised, directed and

4    owned, which means or owned, all or part of an illegal

5    gambling business, particularly a sports betting

6    business, which constitutes a violation of the laws of

7    the Commonwealth of Massachusetts, Chapter 271, Section

8    5, 5(a), 16(a), 17, and 17(a), which involved five or

9    more persons who conducted all or part of such business

10   and which had been in substantially continuous operation

11   for a period in excess of 30 days and, again meaning or,

12   had a gross revenue of $2,000 in a single day.

13             MR. HART:  Yes, your Honor.

14             THE COURT:  Did you commit that crime?

15             MR. HART:  Yes, your Honor.

16             MR. REARDON:  Yes, your Honor.

17             MR. NEOFOTISTOS:  Yes, your Honor.

18             THE COURT:  All right.  And Mr. Hart and

19   Mr. Neofotistos, you're charged in Count 2 with

20   obstruction of state and local law enforcement in

21   violation of 18 United States Code Section 1511.  Do you

22   understand that to prove that crime the government would

23   have to prove beyond a reasonable doubt first that two

24   or more people named in the indictment as

25   co-conspirators, the two of you, agreed to obstruct the

1    enforcement of the criminal laws of Massachusetts,

2    second, that one person -- not the two of you, but one

3    other person, um, was an official of the Commonwealth of

4    Massachusetts, a public official, third, that one or

5    more of you conducted or financed or managed or

6    supervised or directed or owned all or part of an

7    illegal gambling business, fourth, that you knowingly,

8    meaning intentionally, not by accident or mistake, and

9    willfully, meaning you knew it was illegal, participated

10   in this unlawful plan with the intent to facilitate an

11   illegal gambling business, and fifth, during the time

12   charged at least one of you knowingly committed at least

13   one overt act to affect the object of this crime,

14   basically that you did something to achieve the goal of

15   the crime.

16            MR. HART:  Yes, your Honor.

17            THE COURT:  Okay.

18            MR. NEOFOTISTOS:  Yes, your Honor.

19            (Pause.)

20            THE COURT:  And here is one -- the specific

21   charge is that in or about between December 27, 2006 and

22   continuing until about May of 2007, in the District of

23   Massachusetts and elsewhere, Mr. Hart and

24   Mr. Neofotistos and others known and unknown to the

25   grand jury did conspire and agree to obstruct the

```
 1   enforcement of the criminal laws of the Commonwealth of
 2   Massachusetts with intent to facilitate an illegal
 3   gambling business where one or more such persons was an
 4   elected official of the Commonwealth, one or more of
 5   such persons conducted, financed, managed, supervised,
 6   directed and owned all or part of an illegal gambling
 7   business, that one or more of such persons committed an
 8   act to affect the object of the conspiracy in that an
 9   elected law enforcement official of the Commonwealth did
10   cause information to be provided to defendant Adam Hart,
11   that Adam Hart's illegal gambling business was the
12   subject of a state law enforcement investigation.
13        Did you commit that crime?
14             MR. HART:  Yes, your Honor.
15             MR. NEOFOTISTOS:  Yes.
16             THE COURT:  Now, I'd like all three of you to
17   listen while Mr. Wyshak summarizes what the government's
18   evidence would have been if it went to trial, then I'm
19   going to ask if you agree with the government's summary
20   of what you did.
21             MR. WYSHAK:  As I stated earlier, your Honor,
22   these three defendants operated an illegal sports
23   betting gambling business in the Cape Cod area of the
24   Commonwealth.  That business was in operation for at
25   least 10 years.
```

1        In or about late December of 2006 they received

2    information from one of their customers who was

3    associated with a law enforcement official employed by

4    the Cape Cod D.A.'s office that their gambling business

5    was the subject of a state law enforcement

6    investigation.

7        Evidence would show that subsequent to that

8    tip-off there were a certain amount of meetings between

9    members of the conspiracy and as a result of those

10   meetings the defendants shut down their gambling

11   business essentially until the fall football season of

12   2007 to evade law enforcement detection.

13            THE COURT:  And do you agree with the

14   government's summary of what you did and what occurred?

15            MR. HART:  Yes, your Honor.

16            MR. REARDON:  Yes, your Honor.

17            MR. NEOFOTISTOS:  Yes, your Honor.

18            THE COURT:  And, Mr. Hart, how do you now wish

19   to plead to the two charges against you, guilty or not

20   guilty?

21            MR. HART:  Guilty.

22            THE COURT:  Mr. Reardon, how do you wish to

23   plead to the one charge against you?

24            MR. REARDON:  guilty, your Honor.

25            THE COURT:  Mr. Neofotistos, how do you wish

1    to plead to the two charges against you?

2             MR. NEOFOTISTOS:  Guilty, your Honor.

3             THE COURT:  Then I'll direct the Clerk to

4    enter your pleas of guilty because I find that you're

5    each competent, you're acting knowingly and voluntarily,

6    you're effectively represented, and there's an

7    independent basis in fact to support your plea.

8             (Pause.)

9             THE COURT:  All right.  Unless somebody has a

10   foreseeable conflict or a vacation, I'll schedule the

11   sentencing for August 24th at 3:00.

12            MR. WYSHAK:  Well, your Honor, in light of the

13   fact that the defendants have agreed to cooperate in

14   this manner, um, that date is probably not a good day.

15   I would ask for 6 months.

16            THE COURT:  Well, as a practical matter, when

17   do you think the statute of limitations runs out?

18            MR. WYSHAK:  On this particular case?

19            THE COURT:  Yeah.

20            MR. WYSHAK:  Well, I think that --

21            THE COURT:  Well, what is the statute of

22   limitations?

23            MR. WYSHAK:  It's 5 years, so it's 2012.

24            THE COURT:  Right, and now we're in 2011.

25            MR. WYSHAK:  Yes.  And I'm just asking for

 1    rather than August, maybe sometime later in the fall

 2    might be more practical.  Generally my experience is --

 3          THE COURT:  I might continue it, but I could

 4    sentence them and you could come back on a Rule 35 --

 5    this matter only recently came to my attention.

 6          (Pause.)

 7          THE COURT:  The case was filed on April 26th.

 8    Yeah, the plea agreements for a while -- I'll schedule

 9    something for September.  I may move it.  I also may

10    sentence them.  But whatever it is, you know, apparently

11    you had their cooperation since they signed the plea

12    agreements last year, July 15th, 2010, on two of them

13    and the clock's ticking.  So either -- I assume either

14    the cooperation is going to -- well, either they're

15    going to cooperate and contribute or they're not.

16          MR. WYSHAK:  I understand that, your Honor.

17          THE COURT:  And do the defendants join in this

18    request?  I note that Mr. Hart's 85 years old.  Maybe we

19    ought to get on with this.

20          MR. HART:  I'm all right, yes, your Honor.

21    I'm healthy.

22          MR. GEORGE:  We agreed -- on behalf of the two

23    defendants, Hart and Reardon, your Honor, we agreed that

24    the matter should be put off perhaps a little further

25    than in August.  I just say that now so you can look for

1   something further than in August.

2           THE COURT:  Okay, I'm going to schedule the

3   sentencing for 3:00 on September 22.  If there are any

4   motions or memos or letters, anything not in the

5   presentence report, that the parties would like me to

6   consider, they shall be filed by September 8th, and any

7   responses shall be filed by September 15th.  If there's

8   a substantial assistance motion and, um, it shouldn't be

9   made part of the public record, it can be filed, at

10  least temporarily, under seal.

11          MR. WYSHAK:  Thank you, your Honor.

12          THE COURT:  All right.  Is there anything

13  further in this matter for today?

14          MR. WYSHAK:  No, your Honor.

15          THE COURT:  The Court is in recess.

16          (Ends, 4:40 p.m.)

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4

5          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

6     hereby certify that the forgoing transcript of the

7     record is a true and accurate transcription of my

8     stenographic notes, before Chief Judge Mark L. Wolf, on

9     Wednesday, June 1, 2011, to the best of my skill and

10    ability.

11

12

13    /s/ Richard H. Romanow 7-01-11
      _____
14    RICHARD H. ROMANOW  Date

15

16

17

18

19

20

21

22

23

24

25